# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARBARA BAIR,** | : | **Civil No. 4:13-CV-2866** |
| | : | |
| **Plaintiff** | : | **(Judge Brann)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **CITIZENS BANK OF** | : | |
| **PENNSYLVANIA,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

The Americans With Disabilities Act (ADA) provides that, "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  One important aspect of this statutory scheme designed to protect the disabled from workplace discrimination is the requirement that employees and employers engage in a good faith interactive process in order to determine whether the requirements of

the workplace can be reasonably accommodated with the needs of those who wish to work but face challenges on the job due to disabilities.

The duty to engage in an interactive process is a reciprocal duty: Both the employee and the employer must work together for this process to succeed. At its best, this process yields direct and tangible benefits for both the employer and the employee. However, sometimes the failure to communicate produces confusion rather than clarity.

So it is in this case. The plaintiff, Barbara Bair, was formerly employed for many years as a teller at Citizens Bank and its corporate predecessors. In 2012, Bair's employment was terminated after she undertook an extended and reportedly indefinite leave of absence from work due to a medical condition, scoliosis. While Bair now alleges that this termination was the result of an intentional act of discrimination against her due to her disability in violation of the ADA, the undisputed evidence presents a different story, a story marked by failures of communication and miscommunication, much of which is attributable to the plaintiff herself who told her employer she was disabled and provided a certification from her doctor stating that her disability could not be accommodated in the workplace. In short, the evidence reveals that Bair's termination was, at most, the product of a flawed interactive process between Bair and her employer, a process whose flaws

may have stemmed from several sources but which was in large measure fundamentally flawed due to the choices and decisions made by Bair.

Finding that the evidence only demonstrates an imperfect interactive process, something which falls far short of the intentional discrimination required to prove an ADA violation in this setting, it is recommended that this case be dismissed.

## II.    Statement of Facts and of the Case

### A.    Factual Background[1]

At the time of the events set forth in the complaint, the plaintiff, Barbara Bair, was a woman in her sixties, who had been employed as a bank teller for Citizens Bank and its corporate predecessors since 1990.  By 2010 Bair worked at a State College, Pennsylvania branch office of the bank.  Bair's immediate supervisor was the branch manager, Eli Blackburn.  Ms. Bair suffers from scoliosis, a physical curvature of the spine, and has suffered from this condition for the past forty years. This scoliosis causes significant  pain and limitations on movement for the plaintiff. Over time, Bair had found that alternating sitting and

---

[1]This factual background is derived from the parties' competing statements of facts to the extent that those factual averments are supported by the voluminous evidentiary materials tendered by the parties.  (Docs. 25, 26 and 29.)

standing while at work helped her to alleviate the discomfort caused by this scoliosis.

In 2011, Citizens Bank changed its sales model for retail banking through an initiative called "Branch Transformation." As part of this process, Bair's duties at the branch office changed in ways which often required her to sit for prolonged periods, and limited her ability to sit and stand at will as she had done in the past. While Bair complained of back pain while at work, it is undisputed that Bair never sought any form of physical accommodation from her branch manager because of her scoliosis. (Doc. 26-1, pp. 6 and 8.)[2] Bair also never sought out duty assignments at work which would have allowed her greater flexibility in terms of sitting and standing while at work. (Id., p. 27.) Bair's complete failure to seek or request accommodations from her branch management was particularly regrettable since it is also undisputed that the branch manager, Mr. Blackburn, would have considered sit-stand options for Bair if she had requested such an accommodation.

---

[2]The specificity of Bair's complaints of back pain to her branch office management is not entirely clear. Bair and Blackburn both agree that Bair complained of aches and pains. Bair believes Blackburn also knew of her scoliosis, although she points to no specific conversation which would have placed him on notice of this particular ailment and diagnosis. For his part, Blackburn denies knowing of the specific details of this illness. (Compare Doc. 16-1 with Doc. 26-2.) For our purposes, this dispute between the parties is not material to the outcome of this case.

( Doc. 26-2, p. 12.)  Even in the absence of any request for accommodation for Bair, Mr. Blackburn made physical accommodations for Bair and other female bank employees, instructing male staff to undertake the heavy work of carrying large quantities of coins processed by the branch office.  ( Docs. 26-1, p. 26.)

While Bair never sought any form of accommodation for her back problems from her immediate supervisors, by the Spring of 2012, she began to make plans to seek disability benefits and extended leave from work.  Towards this end, Bair met with her treating physician, Dr. Kopinski, on several occasions between April and July 2012 to discuss her interest in obtaining disability benefits.  (Doc. 26-1, pp. 39, 40.)  Bair did not share these discussions with her on-site supervisor at the bank, Mr. Blackburn.  In fact, Mr. Blackburn appears to have first learned of Bair's plans to seeks disability benefits and extended leave from his own corporate Human Relations Department, as that department was processing a July 2012 leave request made by Bair.[3]

Bair's failure to seek out any workplace accommodations prior to her sudden July 2012 leave departure impeded Citizens Bank in its efforts to try to

---

[3]According to Bair she applied for this leave and disability on-line through the corporate HR department on the eve of her scheduled departure in July 20112, and Mr. Blackburn learned of he planned leave from HR inspiring him to ask Bair, "When were you planning on telling me about this?" (Doc. 26-1, p.7.)

address Bair's workplace medical concerns. The election which Bair made to first pursue disability benefits, rather than a workplace accommodation, then further complicated communications regarding whether there were any reasonable accommodations which could be made to her needs. Three factors combined to further cloud and obscure any understanding by the bank of Bair's workplace needs.

First, from the outset of the process initiated by Bair in July of 2012, it was apparent that Bair's principal interest was in obtaining disability benefits. Thus, Bair's first formal requests to the bank in July 2012 were not framed as ADA accommodation requests. Quite the contrary, Bair was taking the position that she was disabled, could not return to work, and was seeking disability benefits. Bair would persist in this view that she was disabled throughout this process in 2012, continuing to state that she was disabled even as she sought workplace accommodations under the ADA.

Second, the process by which the bank dealt with Family Medical Leave Act requests, ADA accommodation requests, and requests for short term disability benefits was fragmented in ways which created further obstacles to a ready understanding of Bair's requests. (Doc. 25, ¶¶5-9.) Thus in the summer of 2012, Citizens used a third party vendor, Aon Hewitt, to answer employee inquiries

related to leaves of absence.  Employees who dialed a telephone number for the HR service center were provided a prompt for questions related to a leave of absence, and when employees selected the prompt, the call was transferred to Aon Hewitt.  (Id.)  Short term disability benefit requests, in turn, were referred to a representative from Liberty Mutual, who administered Citizens' Short Term Disability benefit program.  (Id.) Citizens Bank's Human Relations department separately assessed and addressed employee ADA reasonable accommodation requests.  (Id.)  In practice, there was very little direct communication between these different entities as they addressed these different employee requests, and information that Bair might have shared with Aon Hewitt in connection with a leave request would not necessarily be available to Citizens Bank HR staff when they later evaluated a very different request, a request for a workplace accommodation.

Finally, the representations which Bair, and her treating physician, made to Citizens Bank in the course of this process changed significantly over time, further hampering any ready understanding of what relief or accommodation Bair ultimately sought from her employer.  Ultimately, the fact that Bair's doctor flatly stated that no reasonable accommodation was possible for her condition

overshadowed any earlier ambiguities in the doctor's prior medical certifications, certifications that the doctor in any event repudiated.

Bair began this process on July 5, 2012, when she applied for a medical leave of absence and short term disability benefits during her lunch hour at work. (Doc. 25, ¶37.) Bair provided her on-site management with no advance notice of her intention to immediately seek a leave of absence, and her bank manager only learned of Bair's plans through his corporate HR department. Bair then left work the following day, July 6, and commenced her medical leave almost immediately thereafter, thus impeding any on-site efforts at discussing reasonable accommodations for her.

Upon receiving Bair's request for a leave of absence and short term disability benefits, Citizens Bank's third party vendor Aon Hewitt sent Bair a letter dated July 6, 2012. (Id., ¶45.) This correspondence included information regarding her rights under the FMLA to up to twelve (12) weeks of unpaid, job protected leave, and directed Bair to take a FMLA Certification Form ("Certification") to her physician to support her requested leave of absence. The letter also informed Bair that the "completion and submission of this form is required in addition to applying for any applicable STD/workers' compensation benefits." (Id., ¶45.) While this correspondence was issued by Aon Hewitt, a

third party vendor, there was nothing in the correspondence that would have alerted Bair that she was not communicating directly with her employer, a factor which may have contributed to subsequent confusion in this case.

Bair promptly delivered this certification form to her physician, Dr. Kopinski, to complete and the doctor completed the form and returned it on July 26, 2012. (Id., ¶¶48-49.) The July 26, 2012, form completed by Dr. Kopinski in support of Bair's claim for leave and disability benefits, reported that she suffered from "chronic back pain [and] significant scoliosis of lumbar and thoracic back pain." (Doc. 26-1, p.48.) That form also indicated that Bair had become unable to work due to this condition on July 2, 2012. (Id.) The disability health care provider certification, however, went on to state in Section 3 that Bair could work but could not perform her current job, explaining that she was restricted from "stand[ing] or sit[ting] prolonged times." (Id.)

Because Bair had initially sought leave and disability benefits, rather than any workplace accommodation, the doctor's July 26 certification raised questions concerning the degree of Bair's disability. Therefore, on July 27, 2012, Bair was asked to provide additional information in connection with this certification, and was specifically told that "Sec. 3 [the portion of the form relating to Bair's ability to work] needs to be corrected." (Doc. 25, ¶¶51-52.) Bair also recalls speaking

with someone associated with this disability process at this time in August 2012 and being informed that her disability and medical leave application should state that she is unable to work. (Doc. 25, ¶¶56-58.) According to Bair she relayed this information to Dr. Kopinski who subsequently supplied a revised medical certification form on or about August 2, 2012, which provided return to work date of July 2, 2013, one year after the alleged onset of Bair's disability.

Liberty Mutual, the short term disability program claims processor used by Citizens Bank, initially denied Bair's short term disability claim on August 13, 2012, and informed Bair of her right to appeal this decision. Following the denial of this claim, at Bair's request, Dr. Kopinski completed another certification form dated August 14, 2012, on which she checked a different box in Section 3, indicating that Bair "cannot do any work." (Id.) After August 2012, Bair's medical communications with Citizens Bank consistently represented that she was totally disabled and was unable to perform any work whatsoever. (Doc. 25, ¶¶54-55.) These communications by Dr. Kopinski were consistent with Bair's stated wishes to the doctor which were focused on Bair's pursuit of disability benefits. Thus, on August 17, 2012, Dr. Kopinski's notes reflected that Bair visited the doctor to discuss the denial of her disability benefits. (Id., ¶59.)

On or about August 20, 2012, Citizens informed Bair that it approved her FMLA leave from July 9, 2012, through September 30, 2012. (Id., ¶60.) While Bair received this medical leave, she continued to actively pursue disability benefits, appealing the denial of her disability benefits with Liberty Mutual in September 25, 2012. (Id., ¶61.)

This appeal was unavailing and on October 11, 2012, the bank sent Bair a letter informing her that it received notice from Liberty Mutual that her disability claim had been denied, and that she had 180 days to appeal the decision. This letter also informed Bair that, while she was not eligible for additional leave under the FMLA, she may be eligible for a reasonable accommodation to enable her to return to work pursuant to the Americans With Disabilities Act ("ADA"). The correspondence, invited Bair to participate in a reasonable accommodation process; explained that reasonable accommodations under the ADA may include "additional time away from work, a modified work schedule, or job restructuring or reassignment, among other things;" and informed Bair that, if she wished to apply for a reasonable accommodation, she should contact Erika House in the Leave Program Office and ask her health care provider to supply supporting documentation about her disability. (Id., ¶¶63-64.) The correspondence also enclosed a copy of a letter for Bair to give to her health care provider, which

explained that Bair was employed as an Advanced Teller, and that Citizens was "attempting to ascertain whether any reasonable accommodations exist that will enable our colleague to perform the essential functions of his/her position." The letter requested that the health care provider return a form titled "Request for Medical Information" via a confidential fax number. (Id., ¶65.)

Dr. Kopinski submitted this certification form to the bank on October 17, 2012. (Id., ¶68.) Bair has attested that she never reviewed the doctor's form prior to its submission. However, the doctor's medical submission provided in response to the bank's request for information concerning whether reasonable accommodations could be made for Bair's medical condition flatly stated that there were no reasonable accommodations which could be provided to Bair in the doctor's opinion. For example, in this certification Dr. Kopinski stated that Bair had scoliosis, which was "indefinite," and that she was "unable to stand or sit greater than 30 minutes." (Id., ¶69.) Further, in response to a question which asked "[a]re there any accommodations that in your opinion will enable the employee to perform the essential functions of his/her position? If so, please describe in detail the requested accommodation. If the accommodation suggested is a leave of absence, please specify." Dr. Kopinski replied: "No. Patient bank teller. Has to stand and sit for prolonged periods." (Id.) Dr. Kopinski repeated

her view that no reasonable accommodation was possible in Bair's case when she responded to a follow-up question on this form which asked her to "describe how the suggested accommodation will enable the employee to perform the essential function(s) of his/her position," stating that efforts at identifying an accommodation were "not applicable" due to the inability to accommodate Bair's disability. (Id., ¶69.)

Presented with this medical statement denying that any reasonable accommodation was possible in Bair's case, Erika House, the bank's HR manager assigned to this matter nonetheless attempted to discuss reasonable accommodations with Bair, and spoke with Bair several times by telephone. These efforts undertaken by the bank in order to try to identify a reasonable accommodation were hobbled by mutual misunderstandings, and the fact that each party was viewing this matter through the prism of their own perspective. or Ms. House, who did not have the benefit of prior communications by Bair to Aon Hewitt or Liberty Mutual, the bank's horizons and options were largely defined by Dr. Kopinski's certification, which stated that reasonable accommodations were not possible for Bair. Bair's perspective, in turn, was clouded by the fact that she was still actively pursuing disability benefits, and she had not read Dr. Kopinski's

certification which stated that there was no reasonable accommodation possible in her case.

With these incomplete understandings, House and Bair engaged in an exchange which was wholly unsuccessful. For her part, House emphasized to Bair that if no reasonable accommodation was possible the bank would be forced to terminate Bair. Bair, in turn, described herself as disabled in these conversations, and never sought or requested any specific form of accommodation. Instead, Bair has stated that she emphasized to House that she could only perform work in accordance with Dr. Kopinski's instructions, unaware that Dr. Kopinski had informed the bank that there was no reasonable accommodation possible in Bair's ccase. ( Compare, Docs. 26-1 with 26-3.) For Bair, this reference to her doctor's instructions may have been meant to suggest that she needed a sit-stand option at work, but for House, who had been informed in writing by the doctor that no reasonable accommodation was possible, Bair's insistence that she could only do what the doctor stated was tantamount to an announcement that accommodation was impossible in this case.

Ultimately, the bank informed Bair that the option suggested by Dr. Kopinski, an indefinite medical leave of absence, was not a reasonable accommodation which it could make and terminated Bair's employment. The

letter informing Bair of this decision also explained that, should the denial of Bair's disability claim be overturned, Citizens would approve Bair's leave of absence and reinstate her. Further, this correspondence explained that, if the decision to deny Bair's disabilitywas upheld after her appeal, and Bair's physician subsequently released her to return to work, Bair could reapply for employment with Citizens. (Id., ¶77.)

Bair never pursued these options. Nor did Bair ever inform the bank after receiving this correspondence of the position she now takes in this litigation, that she could have been accommodated through measures short of an indefinite leave of absence. Thus, following this notification, Bair was in contact with Ms. House on three occasions, and met with Mr. Blackburn to return her keys. In none of these instances did Bair seeks any workplace accommodation or correct what she now states was the bank's misunderstanding that she was requesting an indefinite medical leave of absence. (Id., ¶¶80-81.)

Indeed, Bair's attitude towards her ability to return to work at this time was aptly summarized by the plaintiff herself in the following exchange which she had in her deposition in this case: "Q. After you received the termination letter . . . , did you ever indicate to Erika House that you were able to return to work? A. No, because I was not able to return to work." (Id., ¶82.) Bair has consistently

adhered to the view that she was disabled after July 2012, and was unable to

engage in productive activity. Thus, following her termination, Bair declined two

jobs in the banking industry citing her disability. (Id., ¶¶ 90-94.) Bair also

applied for social security disability benefits, attesting that she had become

disabled in July of 2012, and was unable to work after that date. (Id., ¶¶100-102.)

It is against this factual backdrop that we consider Bair's ADA claims.

## B. Procedural History

On November 25, 2013, Bair commenced this action by filing a two count

complaint against Citizens' Bank, alleging a failure to accommodate and wrongful

termination in violation of the Americans with Disabilities Act (ADA). (Doc. 1.)

At the close of discovery, the defendant moved for summary judgment. (Doc. 23.)

This motion is fully briefed, (Doc. 24-30.), and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that the motion for

summary judgment be granted.

## III. Discussion

### A. Summary Judgment– Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying
> each claim or defense – or the part of each claim or
> defense – on which summary judgment is sought. The

> court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact
> and the movant is entitled to judgment as a matter of law.
> The court should state on the record the reasons for
> granting or denying the motion.

Fed. R. Civ. P. 56(a). For purposes of Rule 56, a fact is material if proof of its existence of nonexistence might affect the outcome of the suit under the applicable substantive law. Haybarger v. Laurence Cnty. Adult Prob. & Parole, 667 F.3d 408, 412 (3d Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Id. (quoting Anderson, 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 323 (1986). Provided the moving party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts,

supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings.  See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007); see also Fed. R. Civ. P. 56(c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).  Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true.  Id.  Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  Id. at 252; see also Big Apple BMW, 974 F.2d at 1363.  In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant.  In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent.  It

> thus remains the province of the factfinder to ascertain
> the believability and weight of the evidence.

Id.  In contrast, "[w]here the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

(internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire &

Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

## B.    ADA Guiding Principles

Under the ADA, "no covered entity shall discriminate against a qualified

individual with a disability because of the disability of such individual in regard to

job application procedures, the hiring, advancement or discharge of employees,

employee compensation, job training, and other terms, conditions, and privileges

of employment."  42 U.S.C. § 12112(a).  The ADA defines a qualified individual

with a disability as a person "with a disability who, with or without reasonable

accommodation, can perform the essential functions of the employment position

that such individual holds or desires."  42 U.S.C. § 12111(8).  Further, the Act

defines a "disability" to mean "(A) a physical or mental impairment that

substantially limits one or more of the major life activities of [an] individual; (B) a

record of such an impairment; or (C) being regarded as having such an

impairment." 42 U.S.C. § 12102(2). In this case, the parties agree, at least for purposes of summary judgment, that the plaintiff's long-standing diagnosis of scoliosis constitute a disability that would fall within the protections of the ADA. Nartey Nolan v. Siemens Med. Solutions USA, Inc., No. 5:13-CV-713 BO, 2015 WL 641660, at *1 (E.D.N.C. Feb. 16, 2015), appeal dismissed (May 11, 2015)(scoliosis disabling).

To establish a *prima facie* case of discrimination or wrongful termination under the ADA, a plaintiff must show that: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an otherwise adverse employment decision as a result of discrimination." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (quoting Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998) (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996))) (internal quotation marks omitted); see also Williams v. Philadelphia Housing Auth. Police Dept., 380 F.3d 751, 761 (3d Cir. 2004).

"Adverse employment decision[s]" under the ADA may include not only termination of a plaintiff's employment, but also an employer's refusal to make reasonable accommodations for a plaintiff's disabilities. See id. In this regard, the

ADA specifically provides that an employer "discriminates" against a qualified individual with a disability when the employer does " 'not mak[e] reasonable accommodations to the known physical or mental limitations of the individual unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer.' " <u>Taylor</u>, 184 F.3d at 306 (quoting 42 U.S.C. § 12112(b)(5)(A)) (alterations in original).

If a plaintiff meets this initial burden, the court also needs to consider whether the plaintiff has come forward with direct or circumstantial evidence of discrimination. If the plaintiff has direct evidence of discrimination, then the court uses what is referred to as a "mixed motive" theory, meaning that the plaintiff must show only that the allegedly unlawful motive was a substantial motivating factor in the adverse employment action. <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 187 (3d Cir. 2003). However, in cases where a plaintiff has come forward only with circumstantial evidence of discrimination, then the court uses a pretext theory, which essentially tracks the burden shifting analysis first announced in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>see also</u> <u>Lawrence v. National Westminster Bank N.J.</u>, 98 F.3d 61, 68 (3d Cir. 1996) (in ADA cases, courts apply the Title VII burden shifting analysis).

Under <u>McDonnell Douglas</u>, once a plaintiff has established a *prima facie* case of discrimination, the burden of production switches to the defendant, who must "articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. <u>McDonnell Douglas</u>, 411 U.S. at 802. If the defendant produces legitimate, nondiscriminatory reasons for its employment action, the burden returns to the plaintiff to demonstrate that the defendant's proffered reasons are merely pretext for discrimination. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994). In order to defeat a motion for summary judgment under this framework, a plaintiff must identify some evidence from which a "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Id.</u> at 764. The Third Circuit has explained that in order to prove pretext, a plaintiff may rely on, inter alia, a defendant's credibility or lack thereof, the timing of an employee's termination, and evidence of disparate treatment. <u>See, e.g.</u>, <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>, 142 F.3d 639, 644-45 (3d Cir. 1998) (ADEA case) (citing <u>Fuentes</u>, 32 F.3d at 765). Also potentially relevant is evidence of inconsistent reasons provided as the basis for workplace discipline. <u>See</u> <u>Zelinski v. Pa. State Police</u>, 108 F. App'x 700, 707 (3d Cir. 2004).

## C.     The ADA's Interactive Process Requirement

Beyond a finding of disability the essential elements of an ADA claim are that the plaintiff "is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and . . . she has suffered an otherwise adverse employment decision as a result of discrimination." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). Thus, proving that there was a reasonable accommodation for the plaintiff's disability is an element of the plaintiff's case.

Importantly, "[r]easonable accommodation" further "includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith." Mengine v. Runyon, 114 F.3d 415, 416 (3d Cir. 1997). To achieve this goal of ascertaining whether a reasonable accommodation is possible, courts have grafted a "duty to engage in the 'interactive process' " onto the ADA. Williams, 380 F.3d at 761. Thus, " '[t]he ADA itself does not refer to [an] "interactive process." ' Shapiro v. Township of Lakewood, 292 F.3d 356, 359 (3d Cir.2002). Rather, the text of the ADA requires only that an employer make a reasonable accommodation to the known physical or mental disability of a qualified person with a disability unless the employer can show that the accommodation would impose an undue hardship on the employer. 42 U.S.C. §

12112(b)(5)(A)." <u>Conneen v. MBNA Am. Bank, N.A.</u>, 334 F.3d 318, 329 (3d Cir. 2003). However, the applicable regulations provide that "[o]nce a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. pt. § 1630 app. 1630.9 at 359. The regulations also observe that "[t]o determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability . . . [in order to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

The duty to engage in a meaningful interactive process is a reciprocal responsibility. Both the employee and the employer must participate in this process in good faith. <u>Mills v. Temple Univ.</u>, 869 F. Supp. 2d 609, 622 (E.D. Pa. 2012). In short, "both parties have a duty to assist in the search for an appropriate reasonable accommodation and to act in good faith." <u>Conneen v. MBNA Am.</u>

Bank, N.A., 334 F.3d 318, 330 (3d Cir. 2003). The Third Circuit has explained that the "interactive process must include sufficient notice to inform the employer that an employee is requesting an accommodation followed by good faith participation of the employer and employee in that interactive process." Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 330 (3d Cir. 2003). In order for a plaintiff to hold an employer liable for a breakdown in this mandatory interactive process, she must show that (1) the employer knew about her disability; (2) she requested accommodations or assistance for this disability; (3) the employer did not make a good faith effort to assist her in seeking accommodations; and (4) she could have been reasonably accommodated but for his employer's lack of good faith. Conneen, 334 F.3d at 330-31.

In this regard, " '[t]he law does not require any formal mechanism or 'magic words,' to notify an employer . . . that an employee needs an accommodation. Taylor, 184 F.3d at 313." Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 332 (3d Cir. 2003). However, what is required is that the plaintiff provide her employer with notice of a disability and request a reasonable accommodation for this known disability. Id. "A statement by an employee that she is disabled or has been diagnosed with a disease or disorder, without more, is insufficient to constitute a request for an accommodation. Taylor, 184 F.3d at 313; Prigge v.

25

Sears Holding Corp., No. 09–175, 2010 WL 2731589, at *8 (E.D.Pa. July 9, 2010)." Bielich v. Johnson & Johnson, Inc., 6 F. Supp. 3d 589, 617 (W.D. Pa. 2014). Instead, "an employee '"must make clear that the [he/she] wants assistance for his or her disability' in order to trigger an employer's duty to engage in the interactive process. Conneen, 334 F.3d at 332 (internal quotation marks omitted)." Willis v. Norristown Area Sch. Dist., 2 F. Supp. 3d 597, 608-09 (E.D. Pa. 2014). This burden cannot be met simply through a request for FMLA leave since a request for medical leave does not equate with a disability accommodation request. See Chapman v. UPMC Health Sys., 516 F. Supp. 2d 506, 534 (W.D. Pa. 2007).

Further, the ADA only requires employers to consider reasonable accommodations and it is well-settled that: " 'Not all requested accommodations are appropriate, and the ADA only "provides a right to reasonable accommodation, not to the employee's preferred accommodation." ' Aquart v. Ascension Health Info. Serv., No A–09–CA–804, 2011 WL 233587, at *6 (W.D.Tex. Jan. 24, 2011) (quoting EEOC v. Agro. Distrib., LLC, 555 F.3d 462, 471 (5th Cir.2009)); see Bielski v. Green, 674 F.Supp.2d 414, 424 (W.D.N.Y.2009) (employee cannot insist on particular accommodation if employer provides another reasonable accommodation instead) (collecting decisions)." Stadtmiller v. UPMC Health Plan,

Inc., 799 F. Supp. 2d 492, 509 (W.D. Pa. 2011) aff'd, 491 F. App'x 334 (3d Cir.

2012). Thus, when considering what is a reasonable accommodation under the

ADA "[i]t is utterly unreasonable and not within the mandate of the ADA to expect

an employer to accommodate an employee with an indefinite leave of absence."

Reifer v. Colonial Intermediate Unit 20, 462 F. Supp. 2d 621, 636 (M.D. Pa. 2006).

In short, " '[t]he weight of authority in the [Third Circuit], as well as other Circuits,

clearly establishes that a leave of absence for an indefinite duration is not a

reasonable accommodation.' Garner, 63 F.Supp.3d at 492 (collecting cases); Reifer

v. Colonial Intermediate Unit 20, 462 F.Supp.2d 621, 636 (M.D.Pa.2006)."

Henderson v. Edens Corp., No. CV 09-1308, 2015 WL 4977189, at *8 (E.D. Pa.

Aug. 20, 2015).

     Where the undisputed evidence reveals that an employee has failed to fulfill

her obligations to engage in a meaningful interactive process, an employer is

entitled to judgment as matter of law on any ADA claim. See Conneen v. MBNA

Am. Bank, N.A., 334 F.3d 318, 332 (3d Cir. 2003) Furthermore, it is also clear that

the alleged inadequacy of an interactive process, standing alone, will not support an

ADA claim. Quite the contrary, an alleged "failure to participate in the interactive

process is not a ground for liability unless the employee has proven a failure to

accommodate." <u>Whelan v. Teledyne Metalworking Products</u>, 226 F. App'x 141, 147 (3d Cir. 2007).

### D.    <u>Bair's ADA Claims Fail</u>

While we accept that Bair's medical condition, scoliosis, would qualify as a disability for purposes of the ADA, and acknowledge that the loss of employment constitutes an adverse employment action, we conclude that Bair's case fails as a matter of law because she has not shown any actionable discrimination by Citizens Bank based upon her disability.  As we have noted, to prove these ADA claims plaintiff must show that she "is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and . . . she has suffered an otherwise adverse employment decision as a result of discrimination." <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 306 (3d Cir. 1999).  Thus, proving that there was a reasonable accommodation for the plaintiff's disability is an element of the plaintiff's case.  Where, as here, a plaintiff's ADA claims rest upon a failure of this interactive process, in order for a plaintiff to hold an employer liable for a breakdown in this mandatory interactive process, she must show that (1) the employer knew about her disability; (2) she requested accommodations or assistance for this disability; (3) the employer did not make a good faith effort to assist her in seeking accommodations; and (4) she could have

been reasonably accommodated but for his employer's lack of good faith. Conneen, 334 F.3d at 330-31.

In this case, Bair had not shown that the bank discriminated against her by refusing to participate in a meaningful interactive process with the plaintiff. Quite the contrary, judged against the legal benchmarks which govern such claims, Bair's ADA claims fail as a matter of law because the undisputed evidence shows, at most, a flawed interactive process in this case, and a flawed process where much of the responsibility for the shortcomings in this process rests squarely with the plaintiff.

In this regard, the undisputed evidence shows that, when Bair's duties changed in 2011 she complained of back pain but never sought any reasonable accomodations of her back condition from her on-site managers at the bank. Indeed, Bair has repeatedly acknowledged that she made no such requests for accommodation from her bank manager from 2011 until she left on a sudden medical leave on or about July 6, 2012. In fact, when Bair first applied for a leave of absence on July 5, she did so without telling her manager, who only learned of Bair's decision to seek a leave of absence from corporate HR as she left. Bair's complete failure to initiate this inter-active dialogue with her employer, frustrated and impeded any effort to try to accommodate her needs with the demands of the

workplace. While we acknowledge that "circumstances will sometimes require '[t]he employer ... to meet the employee half-way, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help,' " it is entirely undisputed that as a legal matter "either by direct communication or other appropriate means, the employee 'must make clear that the [he/she] wants assistance for his or her disability.' Jones v. United Parcel Serv., 214 F.3d 402, 408 (3d Cir.2000). The employer must have enough information to know of 'both the disability and desire for an accommodation,' Taylor, 184 F.3d at 313." Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 332 (3d Cir. 2003).

Here, we find that Bair's complaints of back pain prior to July 2012, complaints that Bair acknowledges were unaccompnaied by any request for an accommodation of her duties, were insufficient to satisfy Bair's duty to initiate an interactive process. We also note, as Bair herself has conceded, that even in the absence of any request for accommodations, accommodations were, in fact, made for Bair by bank management at her branch office, in that Bair and other female employees were exempted from the heaviest of work tasks at the branch office. Thus, although Bair never requested any particular accommodation prior to her

sudden departure from work in July 2012, some accommodations were made by for her by her employer.

Further, once Bair applied for a leave of absence, and began actively pursuing disability benefits, her communications with Citizens Bank did not fulfill her duty to alert her employer to her request for reasonable accommodations under the ADA. At the outset, it was apparent that Bair was actively seeking a leave of absence and disability benefits in July of 2012, rather than a reasonable accommodation under the ADA. Thus, Bair first framed her requests to her employer in terms of FMLA leave, and sought a finding that she was disabled. Neither an FMLA leave request, nor a characterization by a employee of her condition as disabling satisfies the ADA's requirement that a worker seek a reasonable accommodation. See, e.g.,Chapman v. UPMC Health Sys., 516 F. Supp. 2d 506, 534 (W.D. Pa. 2007); Bielich v. Johnson & Johnson, Inc., 6 F. Supp. 3d 589, 617 (W.D. Pa. 2014). Quite the contrary, oftentimes the premise behind such requests is the notion that the employee can no longer work, a position which is inconsistent with a reasonable accommodation request, which is typically premised on the idea that the employee is actively seeking to continue her work.

The idea that Bair was completely disabled was precisely what was repeatedly conveyed to Citizens Bank by Bair during this process. Thus, while Dr.

Kopinski's initial July 2012 medical certification submitted in support of Bair's leave and disability applications contained some language suggesting that Bair needed to frequently shift from sitting to standing for her work, when the doctor was questioned about this text, she underscored that Bair was totally precluded from working due to her back condition. Dr. Kopinski took this step in August 2012, and declared Bair unable to work, after consulting with Bair, in an effort to support Bair's disability application. Therefore, it is apparent that the doctor's revised medical certification, which described Bair as completely disabled, was prepared with the knowledge and consent of the plaintiff. While Bair also suggests that she took this course after speaking with some unidentified bank HR employee, that assertion does not change the fact that at the time when these conversations are alleged to have occurred in July and August 2012, Bair was not pursuing a reasonable workplace accommodation. Instead, she was seeking disability benefits. In the context of what Bair was seeking at this time–disability benefits–her statement that than unidentified bank HR representative told her that he disability application should state that she was disabled was perfectly reasonable advice.

The uncontested evidence also shows that Bair's focus did not shift from disability and medical leave concerns to workplace accommodations until some two months later, in October 2012, after her FMLA leave expired and Liberty

Mutual rejected her application for disability benefits. At that time, Citizens Bank

fulfilled "to meet the employee half-way," Conneen v. MBNA Am. Bank, N.A.,

334 F.3d 318, 332 (3d Cir. 2003), by initiating this interactive process and asking

Bair to provide any information which she possessed regarding reasonable

accommodations which could be made for her. Bair's response to this reasonable

accommodation request was to seek out a doctor's medical certification. This

submission, provided in response to the bank's request for information concerning

whether reasonable accommodations could be made for Bair's medical condition,

flatly stated that there were no reasonable accommodations which could be

provided to Bair in the doctor's opinion. For example, in this certification Dr.

Kopinski stated that Bair had scoliosis, which was "indefinite," and that she was

"unable to stand or sit greater than 30 minutes." (Doc 25, ¶69.) Further, in

response to a question which asked "[a]re there any accommodations that in your

opinion will enable the employee to perform the essential functions of his/her

position? If so, please describe in detail the requested accommodation. If the

accommodation suggested is a leave of absence, please specify." Dr. Kopinski

replied: "No. Patient bank teller. Has to stand and sit for prolonged periods." Dr.

Kopinski repeated her view that no reasonable accommodation was possible in

Bair's case when she responded to a follow-up question on this form which asked

her to "describe how the suggested accommodation will enable the employee to perform the essential function(s) of his/her position," stating that efforts at identifying an accommodation were "not applicable" due to the inability to accommodate Bair's disability. (Id., ¶69.)

While we understand that Bair alleges that she was unaware of the content of this medical certification, Bair can hardly fault the bank for accepting this medical certification at face value when assessing what accommodations were now possible. In any event, presented with this medical statement denying that any reasonable accommodation was possible in Bair's case, Erika House, the bank's HR manager assigned to this matter nonetheless attempted to discuss reasonable accommodations with Bair, and spoke with Bair several times by telephone. These efforts undertaken by the bank in order to try to identify a reasonable accommodation were hobbled by mutual misunderstandings, and the fact that each party was viewing this matter through the prism of their own perspective. For Ms. House, who did not have the benefit of prior communications by Bair to Aon Hewitt or Liberty Mutual, the bank's horizons and options were largely defined by Dr. Kopinski's October 2012 medical certification, which stated that reasonable accommodations were not possible for Bair. Bair's perspective, in turn, was clouded by the fact that she was still actively pursuing disability benefits, and she

had not read Dr. Kopinski's certification which stated that there was no reasonable accommodation possible in her case. Thus, in her conversations with Ms. House, Bair acknowledges that she never requested any workplace accommodations from House. Instead, she described herself as disabled, and told the bank that she could only work in accordance with the doctor's limitations, limitations that in October 2012 stated that Bair suffered from a disability of indefinite duration which could not be accommodated in any fashion.

Presented with this information from Bair and her doctor, the bank reasonably concluded that the relief apparently sought by Bair, a medical leave of indefinite duration that was " 'not a reasonable accommodation.' Garner, 63 F.Supp.3d at 492 (collecting cases); Reifer v. Colonial Intermediate Unit 20, 462 F.Supp.2d 621, 636 (M.D.Pa.2006)." Henderson v. Edens Corp., No. CV 09-1308, 2015 WL 4977189, at *8 (E.D. Pa. Aug. 20, 2015). While Bair complains that the bank accepted at face value what her doctor stated in October 2012, and failed to consider the doctor's earlier, and repudiated, July 2012 submission in support of Bair's disability application in reaching its decision, we believe that this argument fails for several reasons.

First, Bair's argument ignores the fact that Bair had an affirmative duty to engage in this interactive process, and it was Bair who obtained the October 2012

medical certification which stated that the plaintiff could not work, and that accommodation of her condition was impossible. In this setting, where the plaintiff has a duty to make her needs and proposed accommodations known to her employer, that employer cannot be faulted for assuming that Bair meant what her doctor said–that no accommodation of her condition was possible.

Second, Bair's reliance on the earlier and repudiated July 2012 certification from Dr. Kopinski ignores several crucial facts. First, this certification was not provided in connection with a reasonable accommodation request. Rather, it was submitted in connection with disability and leave requests. Second, by August 2012, Dr. Kopinski had recanted this initial certification and had stated that Bair was completely disabled from working. Finally, this initial, recanted July 2012 medical certification was three months old and was out-dated by the time Citizens Bank began this interactive process with Bair in October 2012. Therefore, the bank could justifiably rely upon the most recent medical pronouncements made by Bair's doctor, in response to question specifically tailored to determine if an ADA accommodation was possible, when engaging in this interactive process.

Further, we note that, even after the bank communicated to Bair that it understood her accommodation request to be a request for indefinite medical leave, which the bank deemed unreasonable, Bair never took the simple affirmative step

of stating that her needs could be accommodated through a sit-stand option at work, the accommodation she now claims was denied her. Bair's failure to ever identify this potential accommodation, even after she was informed that the bank understood that she was seeking an indefinite leave of absence, is completely antithetical to the reciprocal duties which she as an employee owed to the bank under the ADA's interactive process.

In short, at many turns when Bair had the opportunity to engage in an interactive process aimed at accommodating her disability Bair either declined to do so, or provided conflicting medical information to the bank, information which culminated in an unequivocal statement by her doctor that no accommodation of her medical condition was possible. When the bank relied upon her doctor's statement to conclude that no accommodation was possible, Bair never clarified what she now insists was an error, and never requested any accommodation. Bair's enigmatic approach to conveying her needs had, by October of 2012, effectively required clairvoyance by the bank as part of this interactive process, a requirement that the bank divine what she meant, even if that was not, in fact, what she said. Since "both parties have a duty to assist in the search for an appropriate reasonable accommodation and to act in good faith," Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 330 (3d Cir. 2003), Bair's repeated failures to engage in this process now

preclude her from maintaining these ADA claims. Finding as we do that the undisputed evidence fall short of proving workplace discrimination, but rather simply illustrates a regrettable, but not actionable, break down in an interactive process, a break down which was largely the result of the plaintiff's own failure to fully participate in that process, we recommend that the defendant's motion for summary judgment be granted, and this case be dismissed.

## IV.  **Recommendation**

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT defendant's motion for summary judgment (Doc. 23.) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days of being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of September 2015.

**_MARTIN C. CARLSON_**
Martin C. Carlson
United States Magistrate Judge